OPINION of the Court, by
Judge Logan.
The appellants were complainants below, claiming the land controversy under the prior entry, to which the ap-peilee holds the elderpatent. It is only necessary, therefore, to investigate the appellant’s title. He claims under the following entry :
“ December 13th 1782. John Moseby enters 30,000 acres of land, on, &c. lying about a N. E. course from the Upper Blue Lick, beginning about half a mile south of a pond of water that is on the top of a knob, and running from thence an enstwardly course 800 poles, thence running southward!}'' so as to include a round ancj a\so a ]/,ck \>¡ih several honey-locust trees near the same, and continuing a southwardly course to back of the liills on the north side of Licking creek Upper Blue Lick; thence running a west-wardty course and binding on the north side of the said bills, and also running a westwardly course from the be-§’nn'ng' anc^ continuing the two last mentioned lines westwardly until a line extending from one of them to the other shall include the quantity.”
d'he Pon^ of water is made the leading and an essential call ofthis entry, as the only clew by which precision? or location can be given to it. The Upper Blue Lick aQd Licking will be assumed as well established. And on the other hand, it may also be assumed as a fact, that the pond, knob, lick, &c. called for in the entry, ^a v e no farther claim to .consideration in this cause than their description and identity demand. Neither 0f those objects seem to have acquired general fame, or ^ave attracted any degree of general notoriety or public attention before the date of this entry.
The only means, then, furnished a subsequent inquirer to ascertain from this entry its precise appropriation, is cowrie from the Blue Lick. In pursuing this course the subsequent locator would have been presented with *123 a broken, hilly country for the distance of five or six miles, without the prospect of a certain result in a search upon any of those hills for the object in request; no one hill or knob inviting examination particularly in exclusion of others, whilst a country of hills and broken land seems to have been presented to his view as bewildering and embarrassing to his examination. And had he here, at the distance of five or six miles from the place of his departure, (no inconsiderable distance, when no distance had been given) for once abandoned his only guide, the course which had been given in the entry, and turned oif to satisfy his inquiry among the hills, his search would have proved in vain, first upon one and then upon another of those hills, as they might seem the best deserving the appellation of a knob in comparison with the other surrounding hills ; until at last he would have been compelled to resume his pursuit upon the course given, if farther examination was incumbent on him, to ascertain and avoid the prior entry of another.
But surely upon his still farther pursuit on the northeast course, some reasonable termination to his search and pursuit ought to be conceived of. He, however, pursues his course through the woods two or three miles farther, and so far from the prospect of higher expectations in learning the situation of his prior claimant’s land, even the ground of hope, afforded from a view of high broken ground, seems in some measure to have disappeared. But if per possibility he should still pursue his inquiry, after having gone something more than ten miles on a N. E. course, and by chance have looked out from a particular spot, he would have discovered, not in or near his course, but at the distance oí several miles,-in an eastwardly direction, a knob ; and by going towards that knob, after having reached more than two^ miles, he would have gotten on ground from which another knob could be seen, not quite as far off as the first; and from that knob the one might have been seen on which there is a pond of water : but this knob is farther off, and in a different direction, than the one which had first been seen on the N. E. course aforesaid, though mere in the general direction of that line.
But here, on either of the two knobs first discovered, a broken country, with a chain or range of hills or knob* making from Licking in a direction of about N. 64 E. *124 would have opened to his view. In thik perplexing and embarrassing situation with respect to the direction to take, Q,r the knob first to be examined, the honest inquirer must have despaired of the object of his inquiry, if even he had once arrived at this knob ; for it appears the knob in request is still farther from the Blue Lick about two miles. It is not sufficient that we should now, from a knowledge of the existence and situation of things as they arc, ascertain the intention of the locator. That there were such objects, is not alone sufficient to the validity of an entry. A reasonable connection of the objects, and the certain means of finding them, must be given in the entry.(a)
It would seem unnecessary in this wilderness of ten or twelve miles, here and there presented with a broken, hilly country, without a distance given, or fairly to be inferred, to observe that the examination imposed by this entry to find the pond in question, was unreasonable, and not within the limits of ordinary search, unless aided by other calls which would lead to the vicinity of those objects.
Indeed the first two knobs shewn, which are claimed as being known by the appropriate name of knobs, in exclusion of hills and high ridges, one of which is claimed as the “ round knob” called for in the entry, are southwestwardly from the pond represented. Now the entry calling to run east 800 poles, and then southwardly so as to include a round knob and lick, &c. and thence a westwardly course from this line and the beginning, very strongly imply that the knob and lick intended were to be found near the eastern boundary of the claim. But no such objects are shewn by the complainants near to that boundary, although it is proven that there were licks “ with honey-locust trees near them,” through the country which the entry seems to' cover, any one of which perhaps might have given a different position to the complainant’s entry, and have removed his claim, when run from the point of beginning as claimed by him, from off of the defendant’s legal right, which is immediately on his western boundary.
Again, this entry calls to run southwardly to the back of the hills on the north side of Licking, and thence westwardlv, binding on the north side of the said *125 hills. It is abundantly proven that there is one general range of hills binding on Licking river ; from which we can perceive no room for a difference of opinion with respect to the hills on Fox creek, instead of those binding oh the river. Why not be confined by the hills of any other water course on this long line of 10 or 12 miles ? If it were because those divided between waters running into Licking itself and Fox creek, then it may be replied there were other branches between Licking and Fox creek, and Fox creek is a water of Licking. And if the entry is extended to the main hills binding on Licking, it appears from the connected plat that it will not extend w'estwardly from thence far enough to comprehend the land of the appellee. For this reason, therefore, the court below would have correctly dissolved the injunction and dismissed the complainant’s bill; but upon the other grounds also, the entry cannot be sustained.
Wherefore it is decreed and ordered that the decree »i the circuit court be affirmed with costs, &c.

 Accord. 4th rule, vol. 1, 631, VOl. 2, 649.